Borrome vs. Attorney General Good morning, Your Honors. My name is Tom Griffin. I represent Ramone Borrome, the petitioner on this petition. Yes, good morning, Mr. Griffin. Morning. I reserved, or asked to reserve five minutes for rebuttal. I think there's sort of a global issue that this case implicates, and then a smaller sort of micro issue in how the judge, Judge Arthur, of the Immigration Court made his ruling and got to where he got. As I was preparing this weekend, he should, there's no reason, under the categorical approach, you have to read the statute first. Find an ambiguity. What about the words relating to a controlled substance? Would that let us look down into the underlying circumstances? There's nothing in the related to cases, in the Lully case or anything like that, that's often held up by the Ninth Circuit that has to do, like, it is a drug case. So there's nothing related to. There's no, there's not paraphernalia or transportation or facilitation systems attached to it. The typical relating to cases would be like a pipe to smoke crack, papers to roll a marijuana joint, or a drug house, or something like that. OxyContin was a controlled substance, is it not? It's just not, it's not an issue. You couldn't get to the word OxyContin, because under the categorical approach, you can't get to the indictment. Should we go beyond the, there are two ways you could be implicated here. One is if it's an aggravated felony, or illicit trafficking in a controlled substance. And the other, a violation of law relating to a controlled substance. Would those words relating to let us, take us outside the usual categorical approach? Well, it's either a controlled substance or it's not. It's not, there's no relating to it. I would concede that under the Health and Human Services Act, which is where this comes from, that OxyContin is a drug, and I would concede that under the Controlled Substance Act, it's a controlled substance. And where the judge made his mistake is, he shouldn't even have gotten to the word OxyContin, because under the categorical approach, which is in all the line of cases, from Evanson, Garcia, Thomas, you look at the statute first. And what Judge Arthur didn't do is, first say, I'm reading the statute 331T, and this other Food and Drug Act 353, and I find an ambiguity because I see certain sections of it that could be aggravated felonies and certain that aren't, so now we have to decide which. But there's nothing that's an aggravated felony in the literal reading of those Health and Human Services statutes. What he said, and it's on, in the appendix, the first time he says it, he goes, respondent was convicted of violating count one and a two count indictment. That's completely wrong. He should have said the respondent was convicted of violating title 21, section 331T and 353E. So he jumped, he jumped, and that's where he made his biggest mistake. And he was trying to squeeze something that's in the Health and Human Services Act, that's under a different cabinet, different cabinet position, different investigators as Health and Human Service Officers. It's not even in the criminal code and rules, these things, and under the federal sentencing guidelines, it's not under section 2D, but these are punished as a completely different societal harm under 2N, 2.1, and the maximum, the guideline level is a level six, and it doesn't involve any, there's no adjustments for things that involve street drugs or anything like that. It's really a regulatory offense. If they go, go ahead. No, no, no, is the government prosecuting these kinds of matters in the way that we saw here, or is this a unique case? I've, in terms of the immigration, I just, I'm an immigration lawyer, so I can't, so I only know people who are convicted of this that also have, that also are not citizens. So I've never seen it before. I think there, I think if you go with what the judge says, and also in his ruling he says that this Controlled Substance Act, which shouldn't even come into play here, makes it a felony to knowingly or intentionally manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense any controlled substance, and then he goes on. Well, that's what AstraZeneca does. That's what GlaxoSmithKline does. That's what Endo, I mean, if it's a, they're just separate ways of looking at the stream of commerce of drugs that include things like OxyContin, but also Lipitor, Dilantin, Viagra, and if you're gonna implicate all these van drivers, that if they don't have the right paperwork that day as they're driving from the warehouse over to CVS, you're making it an aggravated felony where you're gonna be deported and banished from the United States forever. There is an overlap between what a drug is and what a controlled substance is, but under this, you can't get to controlled substances. If the government had indicted here, not under 331 or 353, but rather had indicted under the Controlled Substances Act with respect to the particular drug, OxyContin, you would be out of luck then, wouldn't you? Yeah, I think if you're on the street selling to end users pills, OxyContin pills, that's a clear, the DEA's gonna come in and get you with their guns and arrest you, but this is not that. This is a paperwork regulatory offense where the judge did something improper, which was, hypothetically, there's a box of drugs, and the judge opened the box to see what was in there, and there was a lot of drugs in there that aren't controlled substances, and there just happened to be a bottle, and he was improper for him to open that box, and I would analogize it to even receiving stolen property offense, which, if you're sentenced to more than a year, it's an aggravated felony, but that's like, you have the stolen thing, and the stolen thing is a treasure chest, Judge Arthur opened it to see if there was also a firearm in there, or if there was a drug in there, and then tried to work backwards and squeeze it through the Controlled Substances Act, and that's just not, it wasn't an element of the offense, it's not an element of the statute, and it was his sort of circular reasoning, even citing the two-prong approach, he even used that wrong, because this is a federal. What about the argument that the Controlled Substances Act, along with 331 and 353, have similar regulatory goals, namely the keeping potentially dangerous chemicals out of the wrong hands? I don't read it that way, but reading the Food and Drug Act, it really talks about drugs that are for the benefit of mankind, that need the supervision of a doctor, basically the easiest way to say it, these things all need prescriptions. I think when you read the Controlled Substances Act, you see, you are targeting the international drug trade, the illegal illicit drug trade, this is very illicit, the people who get arrested under, or get indicted under the Self and Human Services, it's illicit drug trade, and the Controlled Substances Act, and even the Immigration Act, talks about illicit trafficking in a controlled substance, and this is illicit trafficking in a drug, which is a completely different sort of societal harm. Should we just focus on the controlled substance argument here and not the aggravated felony? The government doesn't appear to be pushing. Yeah, I can concede that I don't quite understand what the government approach is in this case. I mean, it's a threshold issue in immigration court. You first have to determine removability. Is the thing the person was convicted of something that could render him removable from the country? The second phase is applying for relief, and is there a way out of it? Is there a way to stay in the country in spite of your removability? At the removability stage, the judge, what we call pre-termitted all applications, he said, this is a controlled substance offense and an aggravated felony. If the judge had found that it wasn't an aggravated felony, but a controlled substance offense, he would have a way out. He would have at least an application for relief called cancellation. And if he found that it was neither, the case would be terminated. He would just be restored to his lawful permanent status. I think it's the same argument in terms of 237A2B, the controlled substance deportation ground. How did the judge get to controlled substance? The statute doesn't invite an inquiry. It's not ambiguous. He, like I said, he opened the box of drugs that was on its way to CVS. And he had no grounds to do that. He had no, there was nothing ambiguous that said, let me see to fix this. Thank you very much. Cohen. Morning, your honors. May it please the court. Edith Ducone on behalf of the respondent, attorney general. If your honors will. How do you justify departing from our formal categorical approach in this case? Are you asking with respect to the? Either way. Well, with respect to aggravated felony determinations, it's clear that this court has explained that the categorical approach must be applied. However, the same is not true with respect to the controlled substance ground. Why? Yeah, why? As the board, this court, and the Supreme Court have explained, the phrase relating to has a broad meaning. It's to be read expansively. And that means to stand in some relation, to have bearing or concern, to pertain, to refer or bring into association with. Thus, the question is whether a law is one relating to a controlled substance. In applying that broad definition, this court and others have considered convictions for crimes such as possession of drug paraphernalia to be a conviction of a law relating to controlled substance notwithstanding the fact that no controlled substance was actually involved. Is there any precedent for using a violation of 331 and 353 as a basis for removal? Any case at all? Not that I'm aware of. If this law doesn't even, the law that is involved here doesn't even mention controlled substances, does it? It does not. However, it's clear that it's intended to regulate the distribution of substances, many of which are controlled substances. But it all could have been penicillin. For that matter. It could have been, but the question is whether it's a law relating to a controlled substance. And in this case. You made the decision not to charge him with a controlled substance violation. You made the decision to charge him with regard to a violation of handling drugs without a proper license. There could have been several reasons why the federal prosecutor chose to take the route that he or she did. I'm not sure because the record doesn't indicate what their thinking was. However. Doesn't it make a difference though? Whatever. The fact that he was prosecuted under the regulatory provisions. It does not. It does not. In fact, several state court convictions under state laws which do not include mention of the Controlled Substance Act also have been found to be a law relating to controlled substance. And thus, in the Ninth Circuit's decision, Lou Lee, they indicated that the state court, the state statute, excuse me, did not map perfectly with the definition of a controlled substance under the Controlled Substances Act, but said that it was a law relating to a controlled substance nonetheless. And in this case too, this law is a law relating to a controlled substance. Now. Well, that's the conclusion, but you gotta help us get there. I mean, let's take the situation. And I'll admit this first one, I'll give you two examples, and the first one is a bit far-fetched. Okay. Pharmacists must use latex gloves to handle OxyContin. And he doesn't. Is that a crime relating to a controlled substance? The Attorney General would have to determine that in the first instance. And as this court has recognized, the phrase relating to is one which this court should defer to the board's interpretation of. Okay, let's take an actual case. The 21 U.S.C. 353 D3B says that authorized distributors of drug suppliers must store the drug samples in under conditions that will maintain their stability, integrity, and effectiveness. In other words, to assure that they work. Somebody doesn't do that. And 353 D3B is a criminal offense. And the U.S. Attorney indicts. Is that a crime relating to a controlled substance? What would have to be considered in that case is whether that statute stands in some relation to, has some bearing with, pertains, refers, or brings to association with the controlled substance. And that would be the question to be determined by the board in such a case. You're asking us to go a long way. Because those examples really make it almost seem to be absurd for what is intended under the particular definition of aggravated felony here, isn't it? Well, I'll point the court to a case cited in the Respondent's Brief Desire, which is a Seventh Circuit case which related to a statute under Illinois law which related to lookalike substances. Now, lookalike substances are not controlled substances, and that's the whole point. They look like controlled. But they were intended to be controlled substances. I mean, they were intended to have somebody who bought them think they were controlled substances. That's correct, that's correct. But they're in no way chemically, well, chemically perhaps they are, but they are not controlled substances. And that's the whole point that Desire was making in that case. The Seventh Circuit explained it. If Congress wanted this one-to-one relationship, then it could have used a phrase like involved. But there, it says, I'm telling you that I would like you to give me money because I'm going to give you cocaine. And I give you instead baking powder, but I take powder, but I take your money. I can understand how Desire comes out. But that seems to be different from a case in which I'm prosecuted criminally for not storing drugs to be given to suppliers in the proper way. In this case, we're dealing with a prohibition on the distribution of drugs under Section 353E of 21 U.S. Code. And that relates to wholesale distribution in interstate commerce of drugs. Clearly, this type of statute relates to a controlled substance. And of course, as recognized in Respondent's Brief, there isn't a total overlap. Some drugs will not be controlled substances, and some controlled substances will not be drugs. However, schedules two through five of the five schedules of controlled substances are those which have medical purposes for which a prescription is required. In other words, most controlled substances do require a prescription. And that's the point here. The point is that Petitioner focuses on illicit versus licit. The same drugs can be illicit or licit depending on how they're distributed. An individual can receive a prescription for an opiate from a doctor. That same opiate can be illegal if purchased on the street, but legal if received as a prescription from a doctor. So we're talking about the same substance. And this statute, under which the Petitioner was convicted, relates to prescriptions and distribution of prescription drugs, many of which are controlled substances. And so there need not be a one-to-one correlation. This law clearly relates to a controlled substance because of the essence of its purpose. So in my examples, those clearly relate to a controlled substance as well. And you're saying that that would be a violation of 1227A2-B1? Which I misspoke earlier. I said aggravated felony. I meant a crime, a violation of a law relating to a controlled substance. We'll deal with aggravated felony later. But in my example, the person doesn't do what he or she is supposed to do on a regulatory basis in terms of preserving and maintaining drugs so that they will be effective. And those people are prosecuted criminally. And the question is, is that a crime relating to a controlled substance? Do we really know? That certainly is a more extreme example than the one in this case, which clearly relates to a distribution of prescription drugs and a violation by wholesale distribution of such drugs. And the court needn't consider those extreme examples because in this case, we have a clear violation of a law which deals at regulating distribution of prescription drugs. And this individual was not a pharmacist. We know that to be the case. And so. Well then, if you wanted to tether this to 1227, why didn't the U.S. Attorney indict under the Controlled Substances Act?  I'm not certain why they chose to prosecute under this statute versus another one. However, they did prosecute under the Federal Food, Drug, and Cosmetics Act, and that's what we have in the administrative record before us. And to take the court one step back, much was made about the immigration judge's reasoning, but to point to jurisdiction for a moment, 242A2C precludes this court from reviewing a petition by an alien who has been removed on certain criminal grounds. Notwithstanding A2C, the court does retain jurisdiction to consider de novo whether the petitioner is an alien who's removable by reason of one of those enumerated offenses in A2C. And so this court does have jurisdiction to consider these issues. However, the court can consider them for a reason other than that provided by the immigration judge because it's reviewing de novo this question, which is a jurisdictional and threshold issue. It almost seems as if what happened here is that one of the seven drugs involved, OxyContin, was a controlled substance. That seems to be the case. Six of the seven were not. But if we're constrained to apply a categorical approach and not any modification of that, I'm at a loss to figure out how 331 and 353 are relating to controlled substance. Well, permit me to reiterate, Your Honor, that when it comes to the aggravated felony ground, the court is obligated to apply the categorical approach. However, that test doesn't apply to a law relating to controlled substance. And as stated in Respondent's brief, position of the Respondent is that the court only needs to reach the law relating to controlled substance because there are no collateral consequences to the aggravated felony finding. I thought you were not arguing that we should apply the modified categorical approach. Not as the aggravated felony. Okay. I'm sorry, repeat the question. I was not arguing. Did you argue in your brief that? He says he concedes that we should apply formal categorical approach. To the aggravated felony finding. However, the argument made in our brief was that the court needn't reach the aggravated felony finding because the law relating to controlled substance ground 237 is dispositive, excuse me, I'm sorry, 237A2B1 is dispositive in this case because there are no collateral consequences to the aggravated felony finding. May I ask a question here? The violation of law in this case was a federal guilty plea, but it could be a state law violation. Absolutely. One of the advantages of the formal categorical approach is the simplicity of only looking at the elements of a state court offense. Very frequently, when you try to go deeper than that, the information simply is not available. There's a file somewhere in a cardboard box in the dusty attic of a courthouse and nobody knows where it is. I speak from years of experience as a district judge. And from my standpoint, it leans very heavily in favor of adopting the formal categorical approach whenever you can when you're doing this type of thing because very often you're not gonna be able to find out what happened, what drugs were involved. Plus the other thing that happens is deals are made. Judges are outnumbered by the sheer number of crimes. So what the underlying situation is in truth very often doesn't surface in the crime to which the person pleads guilty anyway. So you have that problem. And to my thinking, this all points towards one of the advantages of adopting the formal categorical approach with regard to the relating to language. And you're saying we can't do that or we shouldn't? I understand, Your Honor, but the statute says any alien who at any time after admission has been convicted of a violation of or conspiracy attempt to violate any law or regulation relating to controlled substance. So any law or regulation relating to controlled substance. So what's the question before the court? Whether the law. Law relating to. Sure, sure. It doesn't say facts relating to, it says law. But we didn't reach the facts in this case. This is a law relating to a controlled substance. Even if we were to. It wouldn't be a law relating to a controlled substance if you didn't have OxyContin involved. But it doesn't say a law involving a controlled substance. And that's the point I'd like to make to the court. It says a law relating to a controlled substance. And Congress clearly intended to make this apply to a broad swath of individuals who. Because it could relate to OxyContin. You're saying that's enough. It's not whether it could relate to it. It's whether the law does relate to. Does the law relate to. Which means you have to look at the underlying facts. If you look at the statute, the statute itself relates to a controlled substance. Relates to, doesn't necessarily involve. And there is a distinction to be made there. And I understand that that can be difficult. Because, well, it can be. In any case, when we consider what relating to means. If we say that it means standing in some relation to. To have a bearing or concern to pertain. Or bring into association with. This statute brings into association controlled substances. Because many of the drugs which it prohibits the distribution of are controlled substances. And so in the same way that many courts have found that possession of drug paraphernalia, for example. Which includes no controlled substance. The pipe itself, but not the drug. Is a law relating to a controlled substance. Here too, we have a law that relates to controlled substance. And it requires an understanding of how broad Congress's intent was in indicating that it seeks the removal of individuals, aliens, who violate laws of that type. 237. I see what you're saying because there's a possibility that it could involve a controlled substance if that's enough. 237.A2.B.2, the following provision, provides that individuals who are aliens or drug addicts can also be removed. That indicates how broad Congress intended this to be. There's an inadmissibility ground for individuals who admit committing. If you're a. I'm sorry? Usually if you're a drug, well. I was just going to say. Judge Van Antropen's point is, you know. Why should we get beyond the categorical approach? If we do, we're inviting all kinds of cases to come up that are going to be very difficult. They're going to be splitting hairs. And this is a much easier way of getting, making, having certainty with regard to legal matters pertaining to when you have a crime under 1227.A. 1227. I understand the concern if you'll permit me to respond and my time is up. In essence, because what the court is looking at is whether the law relates to a controlled substance, the analysis is somewhat similar to the formal categorical approach because we're looking at the law. The court would be looking at whether the law relates to a controlled substance. So yes, it's a broad inquiry because we're asking whether it relates to, not involves a controlled substance. But we don't need to reach, the court doesn't need to reach the actual facts of the case in order to determine that this is a law, the statute of conviction is a law. I gave you a couple of hypotheticals and Mr. Griffin posed a third hypothetical that really causes a major problem down the road if we go your way. The consequences of this are that we're opening Pandora's box for all kinds of claims that really go against what we understood previously to be the intent of 1227. Aliens who have been convicted of drug-related offenses are removable and that was Congress's intent. And this is the respondent's position that applies in a case like this under this provision 237A2B1. And your honors, I understand my time is up. I don't want to overstay my welcome. Any other questions? Any additional questions? Thank you, your honors. Mr. Griffin. Just quickly, I think what this argument sort of outlines the big problem. I don't see anything that's related. If you read the Health and Human Services, it's all about controlled substances. Some of them are the schedule of drugs that you can be addicted to that are addressed by the Drug Enforcement Administration and agents with guns and some are enforced like Lipitor and Dilantin and stuff like that by inspectors general. I mean, I can't play with the words to say this isn't related to controlled substances. It's right there. But that's, there's two separate agencies, two separate enforcement, two separate sets of regulations. And it's just, parsing words on it just doesn't work. I think, but if you just go straight to the related two cases, it always talks about the facilitation of getting an illicit drug in the illicit market into somebody's body or across the border or in secret. And those are the related two cases. And there's so many in Pennsylvania that are really just about crack pipes. What about the drug paraphernalia cases? Those are all about getting involved, the facilitation of getting the drug ingested. Here we're talking about van drivers that happen to forget their clipboard. And maybe in the back of the van, there's some OxyContin, but maybe 99% of the van is a hypertension drug. And to hold these guys accountable for a drug. Distributing OxyContin sounds like facilitating to me. How would you know that it involved OxyContin if, unless you got to the indictment and the judge wasn't allowed to. The judge had to stay, even on the controlled substance offense, he had to stay within the categorical approach. And is this related to drugs? I guess, I mean, is it related to controlled substances? I guess so. The word is drug all over these two statutes though. Good. Thank you, Mr. Griffin. Case was very well argued. We will take the matter under advisement.